UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.                                                                      8:25-CR-0222 (GTS)


WENJIAN ZHUO,

                           Defendant.

_____

APPEARANCES:                                                    OF COUNSEL:

OFFICE OF THE UNITED STATES ATTORNEY          DOUGLAS G.N. COLLYER, ESQ.
FOR THE NORTHERN DISTRICT OF NEW YORK        Assistant United States Attorney
     Counsel for the Government
14 Durkee Street, Room 340
Plattsburgh, NY 12901

LAW OFFICE OF PATRICK JEROME BRACKLEY        PATRICK J. BRACKLEY, ESQ.
     Counsel for Defendant
233 Broadway, Suite 2370
New York, NY 10279

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this criminal action against Defendant Wenjian Zhuo

(ADefendant@), is Defendant=s post-trial motion for a judgment of acquittal pursuant to Fed. R.

Crim. P. 29.   (Dkt. No. 64.)   For the reasons set forth below, Defendant=s motion is denied.

## I.      RELEVANT BACKGROUND

### A.      Relevant Procedural History

On May 21, 2025, Defendant was charged, by Indictment, with the possession of a

1

controlled substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(C).   (Dkt. No. 16, at 2 [Indictment].)   The charge arose from events allegedly taking

place in Franklin County, New York, on or about January 22, 2025, involving 50 kilograms or

more of marijuana.   (*Id.*)[1]

Because this Decision and Order is primarily intended for the review of the parties, the

Court will not further describe the charge's underlying events, other than to state, generally, that

they involve Defendant being hired through WeChat to drive his car from New York City to the

Akwesasne Mohawk Reservation and back (an approximately 13-hour, 750-mile trip), to

transport twelve suitcases and boxes, for which he was to be paid $940.   (Dkt. No. 64, Attach.

1, at 3.)[2]

A two-day jury trial was held on February 17 and 18, 2026.   (Text Minute Entries filed

Feb. 18-17, 2026; Dkt. Nos. 66-67.)   At the conclusion of the trial, the jury returned a guilty

verdict; in addition, the jury answered "yes" to a special interrogatory asking if the amount of

marijuana was 50 kilograms or more.   (Dkt. No. 59.)

On March 3, 2026, Defendant filed this motion for a judgment of acquittal pursuant to

Fed. R. Crim. P. 29.   (Dkt. No. 64.)   On March 11, 2026, the Government filed its response.

(Dkt. No. 68.)   On March 25, 2026, new counsel for Defendant filed a letter-motion requesting,

---

[1]     Although Defendant was originally charged with another count in the Indictment
(charging him with a conspiracy to distribute and possess with intent to distribute a controlled
substance in violation of 21 U.S.C. §§ 846 and 841[a][1],[b][1][C]), that count was voluntarily
dismissed without prejudice on February 6, 2025, pursuant to Fed. R. Cr. P. 48(a).   (*Compare*
Dkt. No. 16, at 1 *with* Dkt. Nos. 41 and 51.)

[2]     The Court notes that page citations in this Decision and Order refer to the screen numbers
on the Court's Case Management / Electronic Case Filing ("CM/ECF") System, not to the page
numbers printed on the documents contained therein.

in pertinent part, leave to supplement his predecessor's motion.   (Dkt. No. 70.)   On March 30, 2026, the Court granted that part of defense counsel's letter-motion.   (Dkt. No. 74.)   On April 9, 2026, Defendant filed his supplemental motion.   (Dkt. Nos. 77, 78.)   On April 17, 2026, the Government filed its supplemental response.   (Dkt. No. 80.)   On April 25, 2026, Defendant filed his reply.   (Dkt. No. 82.)

**B.      Summary of Parties' Briefing on Defendant's Motion**

**1.      Defendant's Memorandum of Law in Chief**

Generally, in his memorandum of law in chief, Defendant asserts three arguments. (Dkt. No. 64, Attach. 1.)   First, Defendant argues that there is insufficient proof that he constructively possessed any marijuana, because (a) constructive possession requires *knowing* possession, and (b) here, there is no evidence that Defendant either looked into the boxes in his car or knew what marijuana smelled like.   (*Id.* at 4-6.)

Second, Defendant argues there is also insufficient proof that he consciously avoided knowledge that he was transporting marijuana, because (a) that theory is warranted only where the evidence is such that a rational juror could be persuaded beyond a reasonable doubt that the defendant was aware of a *high probability* of the fact in dispute and consciously avoided confirming that fact, (b) here, no evidence exists that Defendant knew what marijuana smelled like; and (c) indeed, in his voice message, Defendant only raised concerns that boxes *might* contain marijuana.   (*Id.* at 7-9.)

Third, Defendant argues that, even if this Court finds that there is sufficient proof that Defendant consciously avoided knowledge of the boxes' contents, that proof is insufficient evidence to convict him of the conspiracy charged in the first count of the Indictment, which is

a specific-intent crime that requires proof that Defendant desired to distribute marijuana.    (*Id*. at 9-10.)

### 2.    Government's Opposition Memorandum of Law

Generally, in its opposition memorandum of law, the Government asserts three arguments.    (Dkt. No. 68.)    First, Government argues that there is sufficient proof that Defendant possessed (specifically, constructively possessed) marijuana for the following reasons: (a) Defendant's argument conflates the elements of possession and *knowing* possession, and ignores the fact that constructive possession requires only that a person have the power and intention to exercise dominion and control over an object, which may be shown by direct or circumstantial evidence; and (b) such evidence exists here because [1] Defendant helped load at least one of the boxes of marijuana into his vehicle, then he adjusted many of the boxes and counted all the boxes, [2] he drove with the boxes in his car for 18 miles (which took 25 minutes) with no one else in the car, and [3] while driving, Defendant joked about selling the contents of the boxes and retiring, an action he could only undertake if he had dominion and control over the marijuana.    (*Id*. at 5-8.)

Second, the Government argues that, at a minimum, there is sufficient proof that Defendant consciously avoided knowledge that he was transporting marijuana for the following reasons: (a) as a threshold matter, the jury could have convicted Defendant for knowingly possessing the marijuana; (b) in any event, a jury could convict a defendant for consciously avoiding learning that he possessed marijuana if the defendant was aware of a high probability of that fact and the defendant intentionally avoiding confirming that fact; (c) here, such conscious avoidance existed because [1] Defendant found the pickup location and the drop-off location to

be suspicious, especially in light of the amount of money he was being paid to simply move boxes, [2] once Defendant possessed the boxes, the person who had hired him wanted his identification, which unnerved Defendant, who refused the request, [3] within three minutes of leaving the pick-up address with the boxes, Defendant called his friend, was the first to use the word "marijuana" to describe the content of the boxes, and then used the word multiple more times in the conversation, [4] in the same conversation, Defendant told his friend that there might be illegal (literally: unclean) stuff in the boxes, and then Defendant went on to joke that the stuff he was transporting might be worth millions of dollars and he could sell it and retire, [5] the 207 pounds of marijuana contained in the boxes had a distinctive odor, even a year later in the jury room, and [6] despite all of this, Defendant refused his friend's urging of him to check the boxes' contents.    (*Id*. at 8-12.)

Third, the Government argues, Plaintiff's last argument should be disregarded, because the Government voluntarily dismissed its conspiracy charge against him, and thus he was not convicted of conspiracy.    (*Id*. at 13.)

### 3.    Defendant's Supplemental Memorandum of Law in Chief

Generally, in his supplemental memorandum of law in chief, Defendant asserts four arguments.    (Dkt. No. 78.)    First, Defendant argue that the Government failed to establish even the first predicate to the application of the conscious avoidance doctrine (i.e., that Defendant subjectively believed that there was a *high probability* that the packages contained marijuana), because (1) the videotapes demonstrated that (a) Defendant was utterly unfamiliar with the fragrance of marijuana, (b) he met his manipulator at a *tobacco* warehouse, and (c) *tobacco* is peddled ostentatiously on the Akwesasne Mohawk Reservation (a fact remarked on by

Defendant), and (2) a Border Patrol Agent testified that *tobacco* smuggling through the Reservation is among his agency's principal concerns.   (*Id.* at 23-27.)

Second, Defendant argues that, in any event, the Government failed to establish the second predicate to the application of the conscious avoidance doctrine (i.e., that Defendant took *deliberate* action to avoid learning of that the packages contained marijuana) – rather than, perhaps, that Defendant *negligently* failed to immediately choose what the Government argued was the only legally permissible course of conduct (i.e., his investigation and self-reporting of a crime that the Government had concluded he was *already* committing) – given the limited time in which the Government afforded Defendant to act (i.e., mere minutes).   (*Id*. at 27-29.)

Third, Defendant argues that, even if Defendant's failure to act in the limited time afforded him was more willful than negligent, his decision not to tamper with his customer's property was motivated by four reasons *other* than a conscious purpose to avoid learning the truth: (a) Defendant was a commercial carrier whose customer explicitly instructed him not to inspect the sealed packages; (b) absent a contractual provision permitting inspection, a N.Y. commercial carrier who opens a sealed package entrusted to him risks criminal prosecution for the crime of tampering; (c) absent a contractual provision permitting inspection, a N.Y. commercial carrier who opens a sealed package entrusted to him risks civil liability for the tort of trespass to chattels; and (d) Defendant believed that his chat logs would establish his *unknowing* possession and absolve him of any criminal intent to possess whatever they might contain.   (*Id*. at 29-32.)

Fourth, Defendant argues that the evidence was insufficient for a rational juror to infer his intent to *distribute* the substance beyond a reasonable doubt for the following reasons: (a) he

6

took possession of the packages unknowingly as an innocent businessman; (b) he immediately sought advice regarding the implications of his emerging suspicions; (c) during the mere minutes he was permitted to ponder his predicament, he vacillated between the different courses of action he could take to extricate himself from it; (d) the last thought he expressed aloud before being stopped was a lament that he was going to take a huge loss on the venture (something he could do only if he intended to abandon the packages or turn them in); and (e) at the time of his apprehension, he believed he still had five hours to figure out a solution.   (*Id*. at 32-35.)

### 4.       Government's Supplemental Opposition Memorandum of Law

Generally, in its opposition memorandum of law, the Government asserts six arguments. (Dkt. No. 80.)   First, the Government argues that, generally, the jury's verdict in this case must stand because Defendant's arguments in support of his supplemental motion are simply restatements of arguments presented to, and rejected by, the jury.   (*Id.* at 3.)

Second, the Government argues that, at a minimum, Defendant consciously avoided learning that he possessed marijuana for the following reasons: (a) as a threshold matter, Defendant's supplemental memorandum of law is rife with English interpretations of his Mandarin statements in the video recordings, but he offers no support for the foundation or accuracy of his these interpretations, which were not before the jury and are outside the record at trial; (b) in any event, a conscious avoidance instruction permits a jury to find that a defendant had culpable knowledge of a fact (even if there is no evidence that the defendant possessed *actual* knowledge of it) when, first, the defendant subjectively believed that there was a high probability that a fact existed and, second, the defendant took deliberate actions to avoid learning of that fact; (c) here, the first requirement (i.e., subjective belief) was met for the same reasons as

stated by the Government in its second argument of its original opposition memorandum of law; (d) although Defendant offers the supposition that he could have believed the substance was tobacco, no evidence was presented indicating that he did so; and (e) the second requirement (i.e., deliberate action) was met because he refused his friend's urging of him to check the packages' contents and continued to drive 18 miles towards his destination until he was pulled over.   (*Id.* at 3-8.)

Third, the Government argues that the Court should reject Defendant's argument that he was at most negligent in failing to act for the following reasons: (a) as an initial matter, Defendant repeatedly constricts the time period in which he committed this crime, when the factual timeline is clear from the trial record; (b) in any event, he was not convicted using a negligence standard, and indeed the jury was specifically instructed that they could *not* convict Defendant based on negligence; and (c) although Defendant attempts to rely on the fact that the Court charged the jury, "In determining whether the defendant acted knowingly, you must consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to *you*" and not "to *him*," that misstatement was clearly an inadvertent error, which Defendant conceded is not reversible error because, during deliberations, each juror was provided a copy of the written instructions, which correctly stated "obvious to *him*."   (*Id.* at 8-10 [emphasis added].)

Fourth, the Government argues that the Court should reject Defendant's argument that he was merely ignorant of the boxes' contents for the following reasons: (a) the jury found that the only reason that he did not check the boxes was to avoid learning the truth (specifically that he consciously avoided confirming the high probability of the fact the packages contained

marijuana); and (b) while Defendant retained the opportunity to defeat the inference of knowledge by persuading the jury that he actually believed that it did not contain a controlled substance, here, he made that argument to the jury, who rejected it. (*Id.* at 10-11.)

Fifth, the Government argues that the Court should reject Defendant's argument that there was insufficient evidence of his intent to distribute the substance for the following reasons: (a) "distribution" does not mean a sale but only control over the controlled substance with the state of mind or purpose to transfer to another person; (b) here, within three minutes of picking up the boxes, Defendant knew or consciously disregarded that he was in possession of marijuana yet, for another 22 minutes, he continued toward his destination to deliver the marijuana to someone at the parking lot in New York City to which he was directed; and (c) the case that Defendant relies on is distinguishable because the fact that the marijuana weighed more than 200 pounds is inconsistent with personal use. (*Id.* at 11-13.)

Sixth, the Government argues that the Court should reject Defendant's three remaining arguments for the following reasons: (a) to the extent that Defendant argues that the Government violated his right against self-incrimination by arguing he should have reported the marijuana to law enforcement once he realized he possessed it, that arguments is unsupported by the law and the facts; (b) to the extent that Defendant's argument may be understood to sound in prosecutorial misconduct, such an argument does not entitle Defendant to a judgment of acquittal under Fed. R. Crim. P. 29; and (c) to the extent that Defendant argues that the Court should recognize an innocent-possession defense for possession of controlled substances, such a defense has not been recognized in the Second Circuit and, in any event, Defendant has failed to establish two of the three elements warranting such a defense (specifically, that he had no reasonable legal

alternative to violating the law by taking possession, and that he did not maintain possession any longer than absolutely necessary).    (*Id.* at 14-16.)

### 5.    Defendant's Reply Memorandum of Law

Generally, in his reply memorandum of law, Defendant asserts three arguments.    (Dkt. No. 82.)    First, Defendant argues that the fact that the prosecutors, as "advocates of a proudly xenophobic Administration," offered Defendant a plea deal of a misdemeanor, "by which he might avoid the immigration consequences attendant to a felony controlled substance conviction," demonstrates that the "prosecutors (privately) recognized his actual innocence but were unwilling, for some political, pecuniary or other relatively ridiculous reason, to exercise their ethical responsibility to dismiss the charges entirely," and that, indeed, the prosecutors' opposition to Defendant's motion constitutes a "cover-up[]" that is "worse that its crime[]." (*Id*. at 2-3.)    In doing so, the prosecutors have replaced the ideals to which the United States once aspired with "the me-first never-admit-a-mistake philosophy that this administration embodies."    (*Id*. at 8.)

Second, Defendant realizes that he must await a direct appeal from, or collateral attack to, his conviction in order to challenge (a) the accuracy of the Government's Mandarin-to-English translation, (b) the effectiveness of Defendant's trial counsel with regard to that translation and the admissibility of a post-arrest statement of Defendant, and (c) the misconduct by the Court in encouraging trial counsel's ineffectiveness.    (*Id*. at 3-4.)    In any event, Defendant argues that the Government's Mandarin-to-English translation is sufficient to support Defendant's argument that the evidence was insufficient to sustain his conviction; and Defendant offered his own Mandarin-to-English translation simply to illustrate that it is only going to get progressively

harder for the Government to feign blindness to this blatant miscarriage of justice.    (*Id*. at 5.)

Third, Defendant argues that the evidence he himself naively volunteered to the Government in good faith is so meager that, even when it is viewed in the light most favorable to the Government, it gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, such that a reasonable jury must necessarily entertain a reasonable doubt. (*Id*.)    More specifically, Defendant argues that the Government "distorted" the "exculpatory" evidence provided by Defendant in an "alarming pattern of mischaracter[ization] . . . ."    (*Id*. at 6.)    In particular, Defendant argues that it was "misleading" for the Government to argue that Defendant used the word "marijuana" to "describe the boxes' contents."    (*Id*.)    This is because, Defendant argues, his own words express more doubt than certainty as to whether the boxes contained marijuana.    (*Id*. at 6-7.)    Indeed, the Government's argument that Defendant *knew* that the boxes contained marijuana undermines its alternative argument that Defendant *consciously avoided* that fact.    (*Id*. at 7.)    This is especially so, Defendant argues, given the fact that Defendant was a legitimate commercial carrier who (a) charged no more than the market rate for his services, (b) had no inkling until after the packages were loaded into his vehicle that their custodian would not be accompanying them, and (c) had minimal time in which to investigate matters further.    (*Id*. at 7-8.)

## II.    GOVERNING LEGAL STANDARD

A motion for judgment of acquittal under Fed. R. Crim. P. 29 must be denied if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."    *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis removed).    In other words, the court may enter a

11

judgment of acquittal only if the evidence that the defendant committed the crime alleged is "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (internal quotations omitted); *accord, United States v. Pettway*, No. 20-63, 2021 WL 4188716, at *1 (2d Cir. Sept. 15, 2021).

Viewing the evidence in the light most favorable to the prosecution requires "crediting every [reasonable] inference that the jury might have drawn in favor of the government." *United States v. Temple*, 447 F.3d 130, 136-37 (2d Cir. 2006); *accord, United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008); *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011); *see also United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004) ("While we defer to a jury's assessments with respect to credibility, conflicting testimony, and the jury's choice of the competing inferences that can be drawn from the evidence, specious inferences are not indulged.") (internal quotation marks and citations omitted). It also involves "resolv[ing] all issues of credibility in favor of the jury's verdict." *United States v. Desena*, 260 F.3d 150, 154 (2d Cir. 2001) (collecting cases).

In doing so, the court must view pieces of evidence "not in isolation, but in conjunction . . . ." *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994) (citing cases); *accord, United States v. Miller*, 116 F.3d 641, 676 (2d Cir. 1997); *United States v. Zapata*, 205 F.3d 1327, at *2 (2d Cir. 2000). In addition, the court must apply this sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others." *Guadagna*, 183 F.3d at 130 (2d Cir. 1999) (citing case); *accord*, *United States v. Siri-Reynoso*, 807 F. App'x 103, 105 (2d Cir. 2020). Moreover, "[t]hese principles apply whether the evidence being reviewed is direct or circumstantial." *United States v. Gore*, 154 F.3d 34, 40

12

(2d Cir.1998); *accord, United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004); *United States v. Chow*, 993 F.3d 125, 135 (2d Cir. 2021); *see also United States v. Newman*, 773 F.3d 438, 451 (2d Cir. 2014) ("This standard of review draws no distinction between direct and circumstantial evidence.").

Finally, it must be emphasized that "the court must be careful to avoid usurping the role of the jury."   *Guadagna*, 183 F.3d at 130; *accord, United States v. Autori*, 212 F.3d 105, 114 (2d Cir. 2000).   As a result, "if the court concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *Guadagna*, 183 F.3d at 130; *accord, United States v. Landesman*, 17 F.4th 298, 319 (2d Cir. 2021); *United States v. Djibo*, 850 F. App'x 52, 55 (2d Cir. 2021); *United States v. Martinez*, 769 F. App'x 12, 14 (2d Cir. 2019); *United States v. Applins*, 637 F.3d 59, 76 (2d Cir. 2011). However, "if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt."   *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (internal quotation marks omitted); *accord, Newman*, 773 F.3d at 451 (internal quotation marks and citations omitted).

III.   **ANALYSIS**

A.   **Whether Any Rational Juror Could Find Beyond a Reasonable Doubt that Defendant Constructively Possessed Marijuana**

After carefully considering the matter, the Court answers the question posed in the above-stated heading in the affirmative for the reasons stated by the Government in its opposition memorandum of law.   *See, supra,* Part I.B.2. of this Decision and Order.   To those reasons, the Court adds only that knowledge was nowhere mentioned in the Court's final instructions to the

13

jury regarding this element (to which Defendant lodged no objection).    (Dkt. No. 57, at 18-20.)

**B.      Whether Any Rational Juror Could Find Beyond a Reasonable Doubt that Defendant *Knew* that Possessed Marijuana, Including Under a Conscious Avoidance Theory**

After carefully considering the matter, the Court answers the question posed in the above-stated heading in the affirmative for the reasons stated by the Government in its opposition memoranda of law.    *See, supra,* Parts I.B.2. and I.B.4. of this Decision and Order.    To those reasons, the Court adds only four brief points.

First, the Court is not persuaded by Defendant's argument that the Government failed to establish that he subjectively believed that there was a high probability that the packages contained marijuana.    Although Defendant attempts to raise the possibility that he believed that the packages might contain tobacco, he never used the word "tobacco" in his cellphone conversation with his friend; rather, he used the word "marijuana" multiple times.    (*See, e.g.*, Dkt. No. 68, Attach. 2, at 15-18, 20.)

Second, the Court is not persuaded by Defendant's argument that the Government failed to establish that he intentionally avoided confirming (or negating) the high probability that the packages contained marijuana.    With regard to Defendant's argument that the Government stopped him before enough time had passed for a reasonable juror to conclude that Defendant was intentionally avoiding confirming (or negating) that fact, the Court finds that 22 minutes was enough time, under the circumstances.    For example, it was enough time for Defendant to call a friend who had previously been caught for transporting marijuana, and to do the following: (1) tell his friend that the packages might contain illegal material, (2) suggest that he could rely on his chat records to prove he is "only a delivery guy," (3) ask his friend what marijuana smells

14

like, (4) tell his friend that he smelled something fragrant, (5) express his feeling that the customer was acting weird when he picked up the packages, (6) speculate that the contents of the packages might be worth millions of dollars, (7) agree that he needs to check the boxes, (8) express his belief that the drop-off location was bizarre, (9) ask again what marijuana smells like, (10) express his feeling that it was odd that the customer was spending $1,000 on delivery, and (11) three times decline his friend's suggestion to check the boxes.    (*Id.*)[3]

Third, the Court rejects Defendant's suggestion that it was improper for the Government to rely on, or the Court to instruct the jury on, a conscious-avoidance theory in the alternative. *See United States v. Wedd*, 993 F.3d 104, 120, n.9 (2d Cir. 2021) ("As we have previously made clear, the government need not choose between an 'actual knowledge' and a 'conscious avoidance' theory" and may offer both at trial.") (internal quotation marks omitted; citing cases).[4]

Fourth, while the Court acknowledges that Defendant's motion must be granted if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, *see, supra,* Part II of this Decision and Order, here, the evidence viewed in the light most favorable to the prosecution

---

[3]    The Court notes that, even if (during that period of time) a commercial carrier indeed risked incurring civil or criminal liability for opening a customer's packages without permission, that fact would be irrelevant to this action, given (1) the evidence that the packages in fact contained illegal material, (2) the fact that Defendant could alternatively have rejected, returned or abandoned the packages, and (3) the lack of argument at trial (or even request for a jury instruction) regarding such civil or criminal liability.

[4]    The Court notes that it repeatedly instructed the jury that it could not find knowledge of a fact through conscious avoidance of it if defendant actually believed to the contrary.   (*See, e.g.,* Dkt. No. 57, at 22 ["However, if you find that the Defendant actually believed that the material was not a controlled substance, then he may not be convicted]." )

does *not* in fact give equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence.   Rather, the evidence against Defendant was both circumstantial *and direct* (including video and audio recordings).   In any event, even if all of the evidence were merely circumstantial, if every reasonable inference were drawn in favor of the Government, and all credibility issues were resolved in favor of the jury's verdict, the evidence weighed significantly more in favor of guilt than innocence.

**C.    Whether Any Rational Juror Could Find Beyond a Reasonable Doubt that Defendant Possessed the Marijuana with the Intent to Distribute It**

After carefully considering the matter, the Court answers the question posed in the above-stated heading in the affirmative for the reasons stated by the Government in its supplemental opposition memorandum of law.   *See, supra,* Part I.B.4. of this Decision and Order.   To those reasons, the Court adds only that, in this argument (as in many of Defendant's other arguments) he places a heavy reliance on his favored interpretation of the facts, rather than a reasonable interpretation of the facts in favor of the Government, as required by the standard governing his motion.   *See, supra,* Part II of this Decision and Order.   Simply stated, the jury could have believed, as the Government argued during closing, that Defendant's questions to his friend (during the 22 minutes between picking up the packages and being pulled over) were attempts to "talk himself out of what he's already established that he knows."   (Dkt. No. 67, at 59.)

**D.    Defendant's Remaining Arguments**

After careful consideration, the Court rejects Defendant's remaining arguments for the reasons stated by the Government in its opposition memoranda of law.   *See, supra,* Parts I.B.2. and I.B.4. of this Decision and Order.   To those reasons, the Court adds only one point.

The Court flatly rejects defense counsel's arguments that (1) a relatively common

16

criminal charge[5] (filed by a DEA special agent through a criminal complaint reviewed by an experienced United States Magistrate Judge) constitutes the advocacy of xenophobia, (2) a generous misdemeanor-plea offer (made by a line prosecutor who has more than 15 years of commendable service before this Court with the acknowledged intent to help Defendant avoid the immigration consequences of a felony conviction) demonstrates a corrupt disregard of Defendant's actual innocence, and (3) the prosecutor's opposition to a sometimes-frivolous motion constitutes a criminal cover-up.[6] Finally, the Court respectfully reminds defense counsel of his ethical duty to have a good-faith factual basis for his arguments. *See* N.Y. Rules of Prof. Conduct r. 3.1(a),(b)(3) ("A lawyer shall not . . . assert . . . an issue therein, unless there

---

[5]    *See, e.g., United States v. Bruce,* 75 F. App'x 849, 852 (2d Cir. 2003) (affirming conviction of Guyanese woman for smuggling cocaine into the United States through JFK airport under a conscious-avoidance theory of knowledge, where heroin was contained in two rum bottles in her luggage); *United States v. Aina-Marshall*, 336 F.3d 167, 168-69, 171-72 (2d Cir. 2003) (affirming conviction of Nigerian woman for smuggling heroin into the United States through JFK airport under a conscious-avoidance theory of knowledge, where heroin was contained in the plastic-covered bottom of her suitcase); *United States v. Jaswal*, 47 F.3d 539, 541, 545 (2d Cir. 1995) (affirming conviction of Pakastani man for smuggling heroin and opium into the United States under a conscious-avoidance theory of knowledge, where "he testified that he was threatened to bring a suitcase from Pakistan to New York and that he suspected the suitcase might contain drugs"); *United States v. Feroz*, 848 F.2d 359, 359, 361 (2d Cir. 1988) (affirming conviction of Indian man for smuggling heroin into the United States through JFK airport under a conscious-avoidance theory of knowledge, where heroin was contained in secret compartment of apparently empty attache case that he was given by a man who had offered to help him emigrate from India to the United States).

[6]    (Dkt. No. 82, at 2-3 [arguing that the fact that the prosecutors, as "advocates of a proudly xenophobic Administration," offered Defendant a plea deal of a misdemeanor, "by which he might avoid the immigration consequences attendant to a felony controlled substance conviction," demonstrates that the "prosecutors (privately) recognized his actual innocence but were unwilling, for some political, *pecuniary* or other relatively ridiculous reason, to exercise their ethical responsibility to dismiss the charges entirely," and that, indeed, the prosecutors' opposition to Defendant's motion constitutes a "cover-up[]" that is "worse that its crime[]"] [emphasis added].)

17

is a basis in law and fact for doing so that is not frivolous. . . .   A lawyer's conduct is 'frivolous' for purposes of this Rule if . . . the lawyer knowingly asserts material factual statements that are false."); N.Y. Rules of Prof. Conduct r. 3.4(d)(1) ("A lawyer shall not . . . in appearing before a tribunal on behalf of a client . . . state or allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence . . ."); N.Y. Rules of Prof. Conduct r. 8.4(c),(d) ("A lawyer or law firm shall not . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . [or] engage in conduct that is prejudicial to the administration of justice . . .").

        **ACCORDINGLY**, it is

        **ORDERED** that Defendant's post-trial motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 (Dkt. No. 64) is **<u>DENIED</u>**.

Dated: May 26, 2026
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

18