IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    8:25–CR–222 (GTS) |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Government's Memorandum of Law in** |
| | ) | **Opposition to Defendant's Motion to Vacate** |
| | ) | **the Conviction and Dismiss the Indictment** |
| | ) | |
| **WENJIAN ZHUO,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

This memorandum is submitted in opposition to the defendant's motion to vacate the conviction and dismiss the indictment.

**TABLE OF CONTENTS**

1. Introduction ....................................................................................................................1

2. Offense Conduct ...........................................................................................................1

3. Procedural History .......................................................................................................2

4. Argument ......................................................................................................................3

   a. Relevant law .............................................................................................................4

      i. *Brady v. Maryland* ..............................................................................................4

      ii. Rule 16 and the Jencks Act ...............................................................................5

   b. The CW-1 Evidence is Not *Brady* Material ...........................................................5

   c. The CW-1 Evidence is Not Discoverable ..............................................................10

5. Conclusion ..................................................................................................................10

## 1. Introduction

The United States of America, by and through its counsel of record, hereby responds to and opposes defendant Wenjian Zhuo's motion to vacate the conviction and dismiss the indictment. The defendant principally argues that the government failed to provide him with the contents of a non-testifying witness's jail phone call, cellphone, and proffer and that such failure constituted a violation of the government's *Brady* obligations. The defendant argues the Court should enter an acquittal and dismiss the indictment. But the defendant cannot establish that he was entitled to any of the information. First, the information sought was not exculpatory or material and was only relevant, if at all, to a count that was dismissed before trial upon the government's motion. Second, the government did not suppress the information. Accordingly, the defendant cannot demonstrate prejudice. Finally, none of the complained about information is discoverable under Federal Rule of Criminal Procedure 16 or 18 U.S.C. § 3500.

The motion should be denied without a hearing.

## 2. Offense Conduct

In January 2025, the defendant was hired by an unknown individual to transport a person and boxes from the Akwesasne Mohawk Indian Reservations ("AMIR") to New York City for which he would be paid $940. On January 22, 2025, the defendant drove from New York City to the AMIR. After waiting for hours, he followed Cooperating Witness-1 ("CW-1") from a gas station to a house on the AMIR where primarily CW-1 loaded over a dozen boxes containing marijuana into the defendant's van, though the defendant loaded one box and adjusted many others. The defendant then drove alone toward New York City for 25 minutes and 18 miles before police stopped him.

1

Upon approach to the van, uniformed agents observed the numerous boxes as well as luggage in the rear passenger compartment. The agents approached the driver's window and immediately recognized the odor of marijuana emanating from the open van window.

The boxes were found to contain what laboratory testing confirmed was 94 kilograms of marijuana.

Video evidence from within the defendant's vehicle showed that he was aware he was transporting marijuana just minutes after he left the house.

CW-1 pled guilty to distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), for his role in providing the marijuana to the defendant. CW-1 agreed to cooperate with the government. The government, however, did not call CW-1 as a witness at the defendant's trial, after which the defendant was convicted of possession with intent to distribute a controlled substance, i.e. the marijuana.

### 3. Procedural history.

On January 28, 2025, the defendant was charged by complaint with possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). *See* Dkt. No. 1.[1]

On May 21, 2025, a grand jury returned an indictment charging the defendant, in Count One, with conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C), and, in Count Two, with possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). *See* Dkt. No. 16.

---

[1] All subsequent citations to documents on the docket of Case No. 8:25-cr-222 (GTS) will be preceded by "Dkt. No." Citations to documents on other dockets will be preceded by the applicable Case No.

2

On February 4, 2026, the Court granted the government's motion to dismiss Count One of the indictment. *See* Dkt. No. 41 and February 4, 2026 text order.

On February 18, 2026, the defendant was convicted by a jury of the remaining count of the indictment, charging possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). In answering the special interrogatory, the jury found the defendant responsible for 50 kilograms or more of marijuana.

On March 3, 2026, the defendant filed a motion seeking a judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29. *See* Dkt. No. 64. On March 11, 2026, the government filed its response in opposition. *See* Dkt. No. 68.

On March 25, 2026, current counsel entered a notice of appearance, relieving trial counsel, *see* Dkt. No. 69, and on April 14, 2026, the defendant filed a supplemental motion seeking judgment of acquittal. *See* Dkt. No. 78. Three days later, the government filed its supplemental response in opposition. *See* Dkt. No. 80.

On May 26, 2026, the Court denied the defendant's motions seeking a judgment of acquittal under Rule 29. *See* Dkt. No. 91.

On May 27, 2026, the defendant filed the instant motion. *See* Dkt. Nos. 92-94.

## 4. Argument

The government complied with its obligations under *Brady*, Rule 16, and the Jencks Act. The defendant's conclusory assertions fall far short of his burden to establish a *Brady* violation.

The defendant complains that the government did not provide him with: the contents of CW-1's cellphone to show that CW-1 and the defendant did not have prior contact, a fact of which the defendant is necessarily aware; a recorded telephone call in which a suspected co-conspirator encouraged CW-1 not to cooperate with police; and a report from CW-1's proffer, collectively

3

referred to as "the CW-1 Evidence," which the defendant baselessly assumes contained exculpatory information. In short, the defendant cannot demonstrate that the government withheld exculpatory information because the government did not.

Nor was the government required to disclose the CW-1 Evidence under its discovery obligations because CW-1 did not testify for the government at the defendant's trial.

### a. Relevant Law

#### i. *Brady v. Maryland*

The prosecution must disclose evidence to the defense that is "material to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "Evidence is material within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.  A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Turner v. United States,* 582 U.S. 313, 324 (2017).

To establish a *Brady* violation, the defendant must show that "(1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice."  *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) (citing *Strickler v. Green*, 527 U.S. 263, 281-82 (1999)). "Evidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995).

"Strictly speaking, there is never a real *Brady* violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.

4

### ii. Rule 16 and the Jencks Act

Statements made by co-conspirators are not discoverable under Federal Rule of Criminal Procedure 16. *See* Fed.R.Crim.P. 16(a)(2); *see also United States v. Aquart*, 2006 WL 2684304, at *5 (D.Conn. Sept. 19, 2006) ("To the extent that Defendant seeks discovery of statements made by co-conspirators, such statements are not discoverable.").

"A coconspirator who testifies on behalf of the government is a witness under the [Jencks] Act," *In re United States*, 834 F.2d 283, 286 (2d Cir. 1987), and "the Jencks Act provides the exclusive procedure for discovering statements that government witnesses have given to law enforcement agencies." *Id*. "Statements of testifying co-conspirators constitute Jencks Act material, which is discoverable only *after* the witness has testified on direct examination." *United States v. Barret*, 824 F.Supp.2d 419, 461 (E.D.N.Y. Nov. 16, 2011) (emphasis in original).

In contrast, "[s]tatements of non-testifying co-conspirators are not discoverable at all." *Id.*, at 460-61; *see also United States v. Yarborough*, 2007 WL 962926, at *16 (W.D.N.Y. Mar. 28, 2007) ("[T]he statements of nontestifying co-conspirators are not discoverable before trial, as the Jencks Act provides the sole means for discovery of the statements that government witnesses have given to law enforcement agencies.").

### b. The CW-1 Evidence is Not *Brady* Material.

It is the defendant's burden to establish a *Brady* violation. *See Payne*, 63 F.3d at 1208. The defendant's claim fails at the outset. As the defendant's alternative request for this Court to review the CW-1 Evidence *in camera* demonstrates, the defendant cannot support his assertion that the government possesses exculpatory information within "CW-1's captured conversation(s), proffer, and the government's analysis of [CW-1's] phone" as required to establish a *Brady* violation.

In a woefully inadequate attempt to support his position, the defendant suggests that a phone call wherein one co-conspirator encouraged CW-1 not to cooperate was somehow exculpatory to the defendant. It is believed that in the phone call, Suspected Co-conspirator-1 encouraged CW-1 not to cooperate, and CW-1 agreed. But neither the existence of that conversation nor its content, exculpates the defendant.

The defendant speculates that CW-1 must have said something exculpatory about the defendant in a proffer. But as the government set forth in its Witness List, CW-1 would have testified to the existence of a marijuana-trafficking conspiracy, his/her and the defendant's actions, and his/her interactions with the defendant on January 22, 2025, all of which was contained on the video evidence admitted at trial and none of which was exculpatory.

Similarly, the lack of communication between the defendant and CW-1, which the defendant posits CW-1's proffer and cellphone would establish, does not exculpate him. The government never asserted that the defendant was in contact with CW-1 prior to January 22, 2025, or Suspected Co-conspirator-1 at all. But, in any event, the government did not suppress that information.

Of course, the defendant is aware of whom he did and did not have contact and could so inform his counsel. But, three months before trial, the government provided defense with the contents of the defendant's cellphones, which showed the same lack of communication he complains about not knowing. If CW-1's cellphone showed no contact between he and the defendant so too would the defendant's cellphones. The defendant's cellphones similarly showed no contact between he and Suspected Co-conspirator-1. Accordingly, the defendant "knew or should have known the facts permitting him to take advantage of this information." *See United States v. Zackson*, 6 F.3d 911, 918-19 (2d Cir. 1993); *United States v. LeRoy*, 687 F.2d 610, 619

(2d Cir. 1982) ("The rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government.").

Further, "there is no requirement that each member of a conspiracy conspire directly with every other member of the conspiracy." *United States v. Friedman*, 854 F.2d 535, 562 (2d Cir. 1988). "The jury need not have concluded that the same people were involved throughout the entire period of the conspiracy in order to find one conspiracy." *United States v. Nersesian*, 824 F.2d 1294, 1303 (2d Cir. 1987).[2]

As contact between any two specific co-conspirators is not required to prove a conspiracy, the lack of contact between the defendant and some other co-conspirators does not undermine the existence of a conspiracy, especially when one considers the text messages and phone calls between the defendant and the person who hired him, and the defendant's video-recorded contact with CW-1. And a conspiracy does not necessarily involve only two people as the defendant seems to suggest. *See* Defendant's Motion at 11 ("The Government had information…strongly suggesting that Mr. Zhuo was *not* a CW-1 – [Suspected Co-conspirator 1] coconspirator."). The video of the defendant and CW-1 loading boxes of marijuana into the defendant's vehicle and the defendant's conversations with the unknown co-conspirator to whom he was to deliver the marijuana present evidence supporting the existence of a conspiracy and the defendant's

---

[2] *See also* 1 Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-4. ("In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.")

involvement in it. But as discussed *supra*, a conspiracy can involve many individuals, some of whom may not have contact with or know of each other. *See United States v. Eppolito*, 543 F.3d 25, 47 (2d Cir. 2008) ("[I]t is not necessary that the conspirators even know the identities of all the other conspirators.").

Finally, the defendant cannot establish prejudice as required.[3] The defendant's motion is predicated on the CW-1 Evidence being exculpatory solely as to Count One, which charged conspiracy to distribute and possess with intent to distribute a controlled substance.[4] Count One was dismissed in advance of trial and the defendant was not tried on that count. *See* February 4, 2026 Text Order.

At trial, the government narrowed the focus of its case to the time during which the defendant possessed the marijuana as charged in Count Two and the central pieces of evidence supporting the defendant's conviction were the video recordings of him in his vehicle with the marijuana. With Count Two the focus of the trial evidence, and with Count One having been dismissed in advance of trial, information allegedly relevant to Count One had no bearing on the verdict. As information relative to an abandoned count could not have "undermine[d] the

---

[3] The defendant incorrectly argues he is not required to show prejudice ("Although no prejudice owing to the impermissible withholding need be proven[.]"). *See* Defendant's Motion at 13, Section C.

[4] *See* Defendant's Motion, Dkt. No. 93 at 4 ("While the absence of evidence of any prior or clandestine contact between Cooperating Witness-1 and Mr. Zhuo would undermine the theory *underlying Count 1*") (emphasis added); at 7 ("…the Government has failed to inform it that Cooperating Witness-1 had exculpated Mr. Zhuo of any involvement in the pre-existing marijuana distribution *conspiracy*.") (emphasis added); at 10 ("All Indications Here Suggest That The Government Suppressed Information That Exculpated Mr. Zhuo *On The Conspiracy Count*." (emphasis added); at 10 ("…not to call CW-1 to testify could only mean that CW-1 was unable to implicate Mr. Zhuo in CW-1's *conspiracy*.") (emphasis added); at 11-12 ("…clearly undermines the theory *underlying Count 1*, that Mr. Zhuo was a coconspirator…") (emphasis added).

8

confidence in the outcome of the trial," *see Turner,* 582 U.S. at 324, or changed the result of the trial, the information is not material.

The defendant cannot show he suffered any prejudice and his motion should be denied. *Id.* ("[P]etitioners here are entitled to a new trial only if they establish the prejudice necessary to satisfy the materiality inquiry." (internal citations omitted)); *see also Strickler*, 527 U.S. at 282. ("It is the third component—whether petitioner has established the prejudice necessary to satisfy the 'materiality' inquiry—that is the most difficult element of the claimed *Brady* violation in this case.")

The defendant argues that not having the CW-1 Evidence affected his consideration of the pretrial plea offer of misdemeanor simple possession, in violation of 21 U.S.C. § 844. The rejected plea offer was to a reduction of Count Two. Again, the alleged prejudice is based upon Count One, which again, was dismissed prior to trial and would have been dismissed as part of the plea offer had it been accepted.

The defendant also claims prejudice because he could have called CW-1 to testify at trial. But as the government set forth in its Witness List, CW-1 would have testified to the existence of a marijuana-trafficking conspiracy, his/her and the defendant's actions, and his/her interactions with the defendant on January 22, 2025, all of which was contained on the video evidence admitted at trial and none of which was exculpatory. Therefore, CW-1's testimony would not "put the whole case in such a different light as to undermine confidence in the verdict." *Strickler*, 527 U.S. at 290.

Therefore, the defendant cannot demonstrate prejudice and if the defendant "was not prejudiced by the delayed disclosure…there can be no *Brady* violation." *United States v. Saipov*, 2023 WL 3495031, at *5 (S.D.N.Y. May 16, 2023). The defendant's motion should be denied.

### c. The CW-1 Evidence is Not Discoverable.

As a co-conspirator, CW-1's statements, including his jail phone call, contents of his cellphone and proffer statements are not discoverable under Rule 16. It is uncontested that CW-1 did not testify at the defendant's trial nor in any pretrial hearing.[5]  Accordingly, the CW-1 Evidence is not discoverable as Jencks material. *See* 18 U.S.C. § 3500(a) ("[n]o statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be subject of subpoena, discovery or inspection until said witness has testified on direct examination in the trial of the case.").

### 5. Conclusion

At bottom, the defendant's specious arguments fail to establish that the sought-after information is even exculpatory, let alone material. He also fails to show that the government suppressed the information or that he suffered prejudice. The defendant's motion should be denied in its entirety without a hearing.

Dated: June 17, 2026

TODD BLANCHE
Acting Attorney General

JOHN A. SARCONE III
First Assistant United States Attorney

By:     */s/ Douglas G. Collyer*

Douglas G. Collyer
Assistant United States Attorney
Bar Roll No. 519096

---

[5] The government advised defense counsel in an email on February 5, 2026- nearly two weeks before trial- that in an effort "to streamline this trial," it would not be calling CW-1 as a witness at trial. Listing a witness on the prospective witness list does not obligate a party to call that witness and does not trigger discovery obligations. *See* 18 U.S.C. § 3500(a) and Court's Trial Order, Dkt. No. 33, at ¶ 8 ("Counsel shall file electronically with the Clerk's Office, with a copy to opposing counsel, a list of witnesses that *may* be called to testify at trial[.]") (emphasis added).

10

**Certificate of Service**

I hereby certify that on June 17, 2026, I electronically filed the foregoing Government's Memorandum of Law in Opposition to Defendant's Motion to Vacate the Conviction and Dismiss the Indictment with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to counsel for the defendant, Patrick Brackley, Esq.


Dated:  June 17, 2026


       */s/ Douglas G. Collyer*

       Douglas G. Collyer
       Assistant United States Attorney
       Bar Roll No. 519096