# PATRICK J. BRACKLEY

−ATTORNEY AT LAW −
233 BROADWAY, SUITE 2370
NEW YORK, NY 10279
TEL. (212) 334-3736

June 19, 2026

<u>VIA ECF</u>

The Honorable Glenn T. Suddaby, Sr. U.S.D.J.
Northern District of New York
James Hanley Federal Building, 11th Floor,
100 South Clinton Street,
Syracuse, New York 13261

  Re: <u>United States v. Wenjian Zhuo</u> 25 CR 222 (GTS)

Dear Judge Suddaby:

  While its scheduling Orders require the defense to reply to the Government's *Brady* Opposition by June 24, see ECF 92, and for Mr. Zhuo appear for sentencing on June 30, because (a) I am unable to effectively advocate for Mr. Zhuo in either capacity and because (b) the Probation Office is unable to fulfill its function,  without access to the notes of Cooperating Witness-1's ("CW-1" ) proffer, I write to ask that the Court (1) order the Government to immediately turn over the proffer notes as well as any other material that is even possibly pertinent to the pending motion and the Court's selection of the appropriate sentence to both the defense and the Probation Office and (2) issue new scheduling orders affording me at least the same seven days from the date the Government discloses the disputed material that the Court has presently given me to respond and affording the Probation Office sufficient time to assess the significance of the disputed material to its Rule 32 responsibilities.

  As the Court is aware, Magistrate Judge Favro entered the Rule 5(f) Order on January 28, 2025.  The Order was clear about the Government's obligations and the consequences of noncompliance.  See January 28 Rule 5(f) Order at 1 (citing <u>Brady</u>, 373 U.S. at 87)("The Government must disclose to the defense all information 'favorable to an accused' that is 'material either to guilt or punishment' and that is known to the Government.  …The Government shall disclose such information to the defense *promptly after its existence becomes known to the Government* so that the defense may make effective use of the information in the preparation of its case."); <u>Id</u>. at 2 ("These obligations also apply to information that is otherwise subject to disclosure regardless of whether the Government credits it.")

CW-1 had to have been fully debriefed by November 6, 2025, when he pled guilty to Count 1 of an Information charging § 841(a)(1) and (b)(1)(C) possession of 50 kilograms of marijuana with intent to distribute, pursuant to a plea and cooperation agreement.  It is inconceivable that CW-1's proffer was not pertinent to the defense at trial and is not pertinent to sentencing.  From what the defense currently knows, which is clearly not even as much as Rule 5(f) requires, much less everything the Government knows, the only possible basis for the Government's decision to dismiss the conspiracy count and the only possible basis for its opening statement concession that Mr. Zhuo was unaware until after he departed from Frogtown Road that the packages contained marijuana, is CW-1's proffer.  The Government's trial brief confirmed as much.  See Gov't Trial Brief, at 2 (ECF 47) ("Cooperating Witness-1 *will testify as to the existence of a marijuana-trafficking conspiracy*, his/her and the defendant's actions, and his/her interactions with the defendant on January 22, 2025.").  The Government's impotent argument in opposition is that, because it never called CW-1 as a witness, the defense was not entitled to his proffer and cannot establish prejudice.  Since the enactment of the Due Process Protections Act, however, those circumstances are no defense to non-disclosure.   Under the plain and unequivocal terms of the 5(f) Order, the defense was entitled to *immediate* disclosure of any information that undermined the then-pending conspiracy count.  Rather than disclose or dismiss, the Government sought to get itself off the hook for an ill-conceived decision to prosecute by duping a far-too-eager Mr. Henry into ignoring Mr. Zhou's protestations of innocence and advising him to plead guilty.  It was not until February 3, 2026, after that effort to secure a guilty plea from an innocent man had failed, that the Government acknowledged that it had *no evidence* to sustain the conspiracy count and dismissed it.  ECF 41.

At that point, because the Government was still representing that it intended to call "Cooperating Witness-1", see ECF 47, Mr. Henry specifically requested that the Government share any *Jencks* material related to the witness.  The Government never turned over any discovery relating to Cooperating Witness-1.  Instead, when the Court sought on February 11 at the final pretrial conference, "to make sure that all discovery has been turned over and production of witness statements under Jencks, production of grand jury testimony, and production of exculpatory evidence or other favorable evidence, potential evidence favorable to the defendant on the issue of guilt or punishment, had been turned over, AUSA Collyer represented to the Court that "it's all been produced."  Final Pretrial Conference, at 5.

While it was meant to bring the Government to its senses, my Rule 29 warnings that the cover up was worse than the crime and things were only going to get worse, warnings that drew no umbrage from the Government itself, instead brought the Court to its feet in the Government's defense. See ECF 91, at pp 16-17 & n.6. ("the prosecutor's opposition to a sometimes-frivolous motion constitutes a criminal cover-up.)  Grounded in my faith in Mr. Zhuo's declarations of actual innocence, I have believed everything I have argued from the outset and the passage of time has only increased my confidence in my assessment of the Government's (mis)conduct here.  As the Court is aware, I shared my affirmation in support of our *Brady* motion with Mr. Collyer in advance of filing and

it drew no protest.   I understand that the Court has personal history with both Mr. Collyer and the N.D.N.Y U.S. Attorney's Office.  Id. at 17 ([Mr. Collyer is] "a line prosecutor who has more than 15 years of commendable service before this Court").

It is respectfully requested that the court resolve the conflict between the defense's fact-based reasoning and Mr. Collyer's bald representations, in essence, that "there's nothing to see here."  Where he represented to this Court that he was going to present at least portions of it at trial through his own testimony, the substance of CW-1's proffer must have the requisite relevance. If the Government has security concerns, it can seek a protective order.   Otherwise, it can claim no harm now, in the post-verdict context, from full disclosure.   Even if the Court's faith in Mr. Collyer somehow remains unshaken, the Court should order disclosure.   The court's own Rule 5(f) Order and the due process framework within which it was issued forbid blind deference to Mr. Collyer's self-serving denial and obligate the Court itself to resolve the dispute.  The Court must exercise the minimum caution necessary to protect Mr. Zhuo's rights to a fair trial and sentence by ordering the Government to disclose everything it learned from CW-1.  The Justice Manual itself anticipates as much.  See JM 9-5.001(F) - Policy Regarding Disclosure of Exculpatory and Impeachment Information. ("Where it is unclear whether evidence or information should be disclosed, prosecutors are encouraged to reveal such information to defendants or to the court for inspection in camera and, where applicable, seek a protective order from the Court. By doing so, prosecutors will ensure confidence in fair trials and verdicts.); JM 9-5.001(D)(C) ("Exculpatory and impeachment information that casts doubt upon proof of an aggravating factor at sentencing, but that does not relate to proof of guilt, must be disclosed no later than the court's initial presentence investigation.").

For the foregoing reasons, the Court should Order full disclosure of all even possibly pertinent material to the defense and Probation and issue new scheduling orders permitting each sufficient time to assess the probative value of the material in anticipation of the *Brady* reply and sentencing.   Should the Court refuse this request, I respectfully request that it facilitate appellate review by endeavoring to fully explain its reasoning.

Respectfully submitted,

Patrick J. Brackley (PJB 6808)

cc: AUSA Douglas Collyer