# PATRICK J. BRACKLEY

−ATTORNEY AT LAW −
233 BROADWAY, SUITE 2370
NEW YORK, NY 10279
TEL. (212) 334-3736

July 26, 2026

<u>VIA ECF</u>

The Honorable Glenn T. Suddaby, Sr. U.S.D.J.
Northern District of New York
James Hanley Federal Building, 11th Floor,
100 South Clinton Street,
Syracuse, New York 13261

Re: <u>United States v. Wenjian Zhuo</u> 25 CR 222 (GTS)

Dear Judge Suddaby:

In the belief that any reasonable person monitoring these proceedings would question the Court's impartiality, I write (1) pursuant to 28 U.S.C. §455(a) to respectfully request that Your Honor retroactively recuse yourself to May 30, 2026, when I first appeared in these proceedings, or alternatively, (2) stay Mr. Zhuo's sentencing so he can seek prompt mandamus review of the Court's refusal to do so.

A. <u>Introduction.</u>

The Court having (1) abdicated his judicial responsibility by ignoring his own scheduling order to deny the potentially dispositive *Brady* motion before briefing was concluded, with no inquiry whatsoever, on no more than the Government's bald assertion that it had committed no misconduct; (2) declined to intervene to correct unconstitutional Government conduct while applauding trial counsel's dereliction of his duty to zealously defend Mr. Zhuo; (2) declared before Rule 29 briefing was concluded on only so much evidence as the Government had theretofore disclosed that Mr. Zhuo was not actually innocent, (3) in the absence of the prosecutor's own denial of the allegation that his favorable plea offer can only be construed as the Government's disbelief in defendant's guilt, vouched for the integrity of the prosecuting attorney not based on the prosecutor's conduct in the present proceedings but on the their shared past experiences; (4) been quick to see the mirage of misconduct in fact-based defense argument but been unwilling to subject the Government to the same ethical scrutiny (5) denigrated defense argument it did not deign to discuss substantively as "frivolous" and (6) implicitly threatened defense

counsel with disciplinary referral, Mr. Zhuo now respectfully asks that the Court retroactively recuse itself to May 30, 2026, when I first appeared in these proceedings.

ARGUMENT

POINT I

WHERE, VIEWED COLLECTIVELY, THE COURT'S DECISIONS, ACTIONS AND COMMENTS WOULD CAUSE  ANY REASONABLE PERSON MONITORING THESE PROCEEDINGS TO QUESTION THE COURT'S IMPARTIALITY, RETROACTIVE RECUSAL IS REQUIRED.

A.      As Important As Doing Justice Is Appearing To Do Justice.

Under the due process clauses of the Fifth and Fourteenth Amendments, parties and the public are entitled to tribunals free of personal bias. In re Murchison, 349 U.S. 133, 136 (1955).

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'Every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law.' Tumey v. State of Ohio, 273 U.S. 510, 532. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' Offutt v. United States, 348 U.S. 11, 14.

In re Murchison, 349 U.S. 133, 136 (1955).  See also MFS Securities Corp. v. S.E.C., 380 F.3d 611 (2d Cir. 2004).

B.      The Standard For Adjudicating A Recusal Motion

To that end, subsection 455(a) of Title 28 provides that "[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his

impartiality might reasonably be questioned." United States v. Wedd, 993 F.3d 104, 114 (2d Cir. 2021)(quoting 28 U.S.C. § 455(a)). Under Section 455(a), partiality is evaluated "on an objective basis, so that what matters is not the reality of bias or prejudice but its *appearance*." Id. (quoting Liteky v. United States, 510 U.S. 540, 548 (1994))emphasis added). See also Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988) ("The goal of section 455(a) is to avoid even the *appearance* of partiality." (internal quotation marks omitted)). It was in 1974 that Congress modified Section 455. Wedd, 993 F.3d at 114 n.4. "[T]he pre-1974 law required a judge to recuse himself only when it was 'improper, in his opinion, for him to sit.' " United States v. Bayless, 201 F.3d 116, 126 (2d Cir. 2000) (emphasis in Wedd) (quoting 28 U.S.C. § 455 (1970)). Under the post-1974 law, "the judge's own subjective perception of impropriety is not necessary to invoke the statute." Id.

Rather, a reviewing court considers "whether a reasonable person, knowing all the facts, would conclude that the trial judge's impartiality could reasonably be questioned." United States v. Thompson, 76 F.3d 442, 451 (2d Cir. 1996) (internal quotation marks and alteration omitted). "In close cases, "the balance tips in favor of recusal." Ligon v. City of New York, 736 F.3d 118, 124 (2d Cir. 2013) (internal quotation marks omitted), vacated in part on other grounds, 743 F.3d 362 (2d Cir. 2014).

While "judicial rulings alone *almost* never constitute a valid basis for a bias or partiality motion," Liteky, 510 U.S. at 555 (emphasis added), "predispositions *developed* during the course of a trial *will sometimes* … suffice. Id. at 554 (emphasis added). *Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings* … constitute a basis for a bias or partiality motion [when] they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Id.

Here, the Court's abdication of its judicial responsibility in the *Brady* and sentencing contexts confirms what most of its previous actions foreshadowed, a deep-seated favoritism for USAO NDNY, the office it once headed,*and* a deep-seated antagonism against the defense.

C. The Court Failed To Ensure That The Trial Remained Fundamentally Fair By Failing To Intervene To Correct Plain Constitutional Error On The Part Of The Government.

A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district. Fed. R. Crim. P. 57(b). While their "potency" requires that they "be exercised with restraint and discretion," a federal court also has broad inherent powers, "governed not by rule or statute" to ensure that the ends of justice are not frustrated and that a proceeding is fundamentally fair. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

Interpreting Fed. R. Crim. P. 52(b) in United States v. Olano, 507 U.S. 725 (1993), the Supreme Court held that, lack of objection notwithstanding, an appellate court

should intervene to correct a "clear" or "obvious" error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." 507 U.S. at at 736.  While a court should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant, actual innocence is not the *sine qua non* for corrective action. 507 U.S. at 736.  An error may "seriously affect the fairness, integrity or public reputation of judicial proceedings" independent of the defendant's innocence. Id. at 736-37.   Rather an appellate court should correct an error if it was prejudicial and affected the outcome of the district court proceedings. Id., at 736.

The Fifth Amendment privilege against self-incrimination embraces statements "which would furnish a link in the chain of evidence needed to prosecute the individual for a crime." See Hoffman v. United States, 341 U.S. 479, 486 (1951).  See also United States v. King, 402 F.2d 694 (9th Cir. 1968) (where, at the time he made the decision not to report information concerning the crime, defendant had no way of knowing that its principals would not implicate him and had he informed on them, had no reason to believe that they would cooperate to exculpate him, he had reasonable cause to believe that, if he had reported crime to the authorities, he would be prosecuted as an aider and abettor, or as an accessory after the fact, a requirement that he self-report violates the Fifth Amendment right against self-incrimination); United States v. Kuh, 541 F.2d 672 (7th Cir. 1976) (because "[t]he object of the Fifth Amendment is to insure that a person should not be compelled to give information which might tend to show he himself has committed a crime", even a statutorily-imposed duty to notify federal authorities is precluded by constitutional privilege).

In United States v. Okatan, 728 F.3d 111 (2013), the Second Circuit addressed the defendant's challenge to an N.D.N.Y. prosecutor's introduction in his case-in-chief of evidence that, when questioned by a border patrol agent prior to his arrest, the defendant asked to speak to a lawyer. 728 F.3d at 113.   Because the Fifth Amendment not only allows a person to express his desire to remain silent, but allows him to simply remain silent until he has the assistance of an attorney, Okatan, 728 F.3d at 113, the panel, led by Judge Lynch, reversed his conviction.  "[T]he right to remain silent exists independently of the fact of arrest." Id. at 118 (quoting United States v. Nunez–Rios, 622 F.2d 1093, 1100 (2d Cir.1980)).  "In order for the privilege to be given full effect, individuals must not be forced to choose between making potentially incriminating statements and being penalized for refusing to make them."  Id.  "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Id. (quoting Hoffman v. United States, 341 U.S. 479, 486–87 (1951).

While Rule 52(b) governs only on appeal from criminal proceedings and is permissive, not mandatory," Olano, 507 U.S. at 735, its construction by the Supreme Court surely informs how a district court should employ the discretion conferred by Fed. R. Crim. P. 57(b).  Here, the Court had witnessed Mr. Zhuo reject a very favorable plea and justify that choice by proclaiming his innocence.  It heard the Government concede

that, when he took possession of the sealed containers, he was ignorant of their contents. Then, despite being alerted to it at the very outset by the Government's opening and observing that his failure to self-report was the theory of the entire prosecution, the Court opted not to correct the flagrant violation of Mr. Zhuo's Fifth Amendment rights.

Particularly pertinent is Berger v. United States, wherein the AUSA who tried the case "was guilty of misconduct, both in connection with his cross-examination of witnesses and in his argument to the jury. Berger v. United States, 295 U.S. 78, 80 (1935). He "abused his position", United States v. Berger, 73 F.2d 278, 281 (2d Cir. 1934), by, *inter alia*, making "undignified and intemperate" insinuations and assertions in cross-examination and summation calculated to mislead the jury", 295 U.S. 78, 85-87. Although Judge Hand and his Second Circuit brethren did not believe it to be "sufficiently grave to affect the fairness of the trial", they condemned the misconduct. Berger, 295 U.S. at 80. Confirming that district judges have a duty to act affirmatively to reign in prosecutorial misconduct that risks undermining a defendant's right to a fair trial, Judge Hand lamented the fact that the trial judge had failed to see "fit to keep [the AUSA] more closely in hand". Berger, 73 F.2d at 81-82. Agreeing that they were "foul blows" "calculated to produce a wrongful conviction," and observing that an average juror's confidence in the office caused them to give great weight to such improper suggestions and insinuations, Supreme Court overruled the Second Circuit and reversed. Id. at 88.

D.  Not Only Did The Court Fail To Correct Plain Constitutional Error To Which Defense Counsel Failed To Object, It Expressed Approval Of The Government's Tactics And Defense Counsel's Dereliction Of His Ethical Duty To Zealously Defend His Client.

Not only did the Court fail to intervene to correct the flagrant violation of Mr. Zhuo's Fifth Amendment rights to which defense counsel failed to object, it subsequently applauded defense counsel's lack of effort and endorsed the trial's result. See T. 79, 193.

E.  The Court Has Repeatedly Prejudged Matters Before All The Evidence On A Particular Issue Had Been Placed Before It And Demonstrated A Pro-Prosecution Bias In So Doing.

In the course of litigating whether Mr. Zhuo retained the right to file a Fed. R. Crim. P. 33 motion, the Court effectively denied the pending Rule 29 motion by declaring, before briefing had concluded and apropos of no argument then before it, that Mr. Zhuo's circumstances presented *"no reasonable question of actual factual innocence."* ECF 76. See Jenkins, 768 Fed.Appx. at 38-39 (this Court *"would reasonably be expected* upon remand *to have substantial difficulty in putting out of ... mind previously-expressed views or findings determined to be erroneous."* (citation omitted) (emphasis added). The Court then did, indeed, deny the Fed. R. Crim. P. 29 motion. ECF 91. In so doing, it dismissed all of the arguments made in 36 pages of

supplementary briefing in a single sentence.  Compare Decision at §§ B(3), B(5) (pp. 5-7, 10-11)(restating just those arguments in 3-plus pages) with §§ III (D)(p. 16)  ("After careful consideration, the Court rejects Defendant's remaining arguments for the reasons stated by the Government in its opposition memoranda of law.").

In the absence of any explanation from the prosecutor himself, the Court, did, however, devote a page to defending the prosecutor's decision to offer the misdemeanor plea, characterizing it as motivated by "generosity."  Canon 2(B)'s caveat that a judge should not testify as a character witness or convey the impression that someone is in a special position to influence the judge notwithstanding, see Code of Conduct for U.S. Judges Canon 2(B)(Judicial Conference of the United States), the Court also vouched for the prosecutor's integrity and disputed the defense' (then-soon-to-be-supported) observation that the cover up always proves more problematic than the crime, (the "crime" here being the Government's ill-conceived decision to prosecute a man it knew to be innocent and to rely on unconstitutional methods to procure his wrongful conviction).  See also United States. v. IBM Corp., 857 F.Supp. 1089, 1096 (S.D.N.Y. 1994)  (while judicial rulings alone almost never constitute valid basis for a bias or partiality motion, surrounding comments or accompanying opinion can).

> The Court flatly rejects defense *counsel's* arguments that (1) a relatively common criminal charge5 (filed by a DEA special agent through a criminal complaint reviewed by an experienced United States Magistrate Judge) *constitutes the advocacy of xenophobia*, (2) a generous misdemeanor-plea offer (made by a line prosecutor who has more than 15 years of commendable service before this Court with the acknowledged intent to help Defendant avoid the immigration consequences of a felony conviction) demonstrates a corrupt disregard of Defendant's actual innocence, and (3) the prosecutor's opposition to a sometimes-frivolous motion constitutes a criminal cover-up.

May 26 Decision & Order at 16-17 (ECF 91).

Concerning, is that the Court chose to endorse Mr. Conyell's service *after* being alerted to the unconstitutional methods that he employed to procure Mr. Zhuo's wrongful conviction.  Arguably, the Court's willingness to leap to his defense has emboldened Mr. Conyell and kept him on his kamikaze course.  His unwillingness to debunk the accusation of a Rule 5(f) violation by sharing CW-1's proffer notes, not even with the Court, added new heft to the charge against which he offered only bald denials.   In that Mr. Conyell extended the offer as he was suppressing exculpatory evidence, the Court's characterization of the plea offer as "generous" itself seems charitable.  See ECF 100.

F.  Conclusion.

In conclusion, it here being clear from the totality of the circumstances - the Court's abdication of its judicial responsibility by ignoring its own scheduling order to deny the potentially dispositive *Brady* motion before briefing was concluded, with no inquiry whatsoever, on no more than the Government's bald assertion that it had

committed no misconduct, its premature rejection of Mr. Zhuo's claim of actual innocence, the contrast between the court's blindness to offenses against Mr. Zhuo and its hypersensitivity to what it misperceives to be insults to Mr. Conyell,  its "flat" rejection of the most obvious constructions of Mr. Conyell's acts, its decisions to: defend him from "accusations" for which the proof continues to grow stronger despite Mr. Conyell's decisions not to dispute them himself;  condemn the defense for generously offering those warnings and vouch for Mr. Conyell's character, that a reasonable person, knowing all these facts, could reasonably question whether the court is capable of deciding the *Brady* motion impartially and of providing Mr. Zhuo due process in sentencing." Thompson, 76 F.3d at 451, the Court would be wise to recuse itself.


POINT II


SHOULD THE COURT REFUSE TO RECUSE, IT SHOULD STAY FURTHER PROCEEDINGS TO PRESERVE THE STATUS QUO WHILE MR. ZHUO SEEKS PROMPT MANDAMUS REVIEW OF ITS DECISION.


In deciding whether a stay is warranted, a court weighs four factors: (1) whether the applicant has made a "strong showing that he is likely to succeed on the merits"; (2) "irreparable injury to the applicant in the absence of a stay"; (3) "substantial injury to the nonmoving party if a stay is issued"; and (4) the public interest. See New York v. United States Dep't of Homeland Sec., 974 F.3d 210, 214 (2d Cir. 2020) (per curiam) (citing Nken v. Holder, 556 U.S. 418, 434 (2009)). The two "most critical" factors are likelihood of success on the merits and irreparable injury. See Nken, 556 U.S. at 434 ("The first two factors of the traditional standard are the most critical.")


As argued in Point I, *supra*, the totality of these circumstances establish that Mr. Zhuo Petitioner is likely to persuade The Second Circuit that the  Court has erred in refusing to retroactively recuse itself.  Aside from repeatedly denying him the immediate release he deserves form dispositive motion, the Court intends to rush to sentence Mr. Zhuo for a crime he didn't commit exposing him to deportation to his native China before the Second Court has the opportunity to adjudicate his direct appeal.  With Mr. Zhuo incarcerated and accumulating credit toward any eventual sentence, the Government can claim no injury.


Should the Court refuse to recuse itself, it should do so with all dispatch and issue a stay to permit Mr. Zhuo to seek prompt review of its decision

Respectfully submitted,

_____
Patrick J. Brackley (PJB 6808)


cc: AUSA Douglas Collyer